90 P.3d 926

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Kyle Thomas ROE, Defendant–Respondent.**

No. 29199.

Court of Appeals of Idaho.

March 2, 2004.

Rehearing Denied May 3, 2004.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Molly J. Huskey, State Appellate Public Defender, Boise; Ryan Peck and Charity Shreve, Legal Aid Clinic, Moscow, for respondent. Ryan Peck and Charity Shreve, Legal Interns, argued.

PERRY, J.

The state appeals from the district court's order granting Kyle Thomas Roe's motion to suppress evidence. For the reasons set forth below, we reverse.

## I.

### FACTS AND PROCEDURE

In July 2002, an officer stopped a vehicle based on a violation of Idaho's seatbelt law. Subsequently, Roe, a passenger in that vehicle, was charged with possession of a controlled substance with the intent to deliver. I.C. § 37–2732(a)(1)(A). Prior to trial, Roe filed a motion to suppress. The district court held a hearing on the motion at which the parties stipulated to the facts as set forth

in the police report. In the report, the officer indicated that he observed a vehicle in which the front passenger was not wearing a seatbelt. The officer reached that conclusion because he noticed the silver latch locking mechanism suspended above the passenger's right shoulder. Based on this observation, the officer stopped the vehicle. Two additional officers soon arrived on the scene to assist. After stopping the vehicle, the first officer explained the reason for the stop and identified the driver by his drivers' license. A second officer verbally identified a rear passenger and, after conducting a check of his records, learned that the rear passenger had three outstanding arrest warrants. The second officer directed the rear passenger to exit the vehicle and placed the passenger into custody. The police report explains further:

> Prior to a search of the rear compartment area incident to arrest, I had the rear passengers exit the vehicle on the passenger side of the car. . . . The second person to exit the vehicle was Kyle T. Roe who was sitting directly behind the driver's seat. As Roe exited the car, he was carrying a pair of blue jean shorts. I told Roe to leave the shorts in the vehicle. Roe placed the shorts onto the ground just below the rear passenger side door. I then had the front occupants exit the vehicle. For my safety, I had the five occupants sit down on the sidewalk next to the car approximately 10–12 feet away. . . . I searched the blue jean shorts which Roe was carrying. . . . Inside the front right pocket, I located a clear zip lock plastic baggie containing five small bundles of a green vegetable matter. Each bundle was wrapped in clear plastic and all had similar shapes and sizes. I also found in the same pocket green vegetable matter wrapped in clear plastic. From my training and experience, all of the substances appeared to be marijuana. I placed Roe into custody without incident and advised him he was under arrest for possession of marijuana under three ounces. As I did this, Roe stated, "It's actually 2.5 grams." I secured Roe into the back of my patrol car. I seized all of the evidence and secured it into my patrol car. After a records check of Roe by central, they advised Roe had a

confirmed warrant. I released the rest of the occupants.

Roe moved to suppress the evidence found during the search and his statements made after his arrest. In support of his motion to suppress, Roe argued that the evidence stemmed from an illegal traffic stop. Roe asserted that the police had no grounds to search his shorts incident to a search of the car because, he argues, they improperly ordered him to leave his shorts in the car as he exited. In granting the motion to suppress, the district court ruled that stopping a motorist for a seatbelt violation pursuant to I.C. § 49–673 did not constitute a valid traffic stop and that the police had no grounds to search Roe's shorts incident to a search of the vehicle.

The state appeals from the district court's order granting Roe's motion to suppress. On appeal, the state argues that the district court erred in suppressing the evidence because the police had reasonable suspicion to stop the vehicle based on a violation of Idaho's seatbelt law. The state also argues that the district court erred because the search of the car and Roe's shorts was valid incident to arrest based upon the arrest of a passenger or, in the alternative, the outstanding warrant for Roe's arrest.

## II.

### ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## A. Valid Traffic Stop

■ The state argues that an apparent violation of I.C. § 49–673 provides reasonable suspicion for a traffic stop and, thus, the district court erred in granting Roe's motion to suppress evidence on this ground. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); *Atkinson,* 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628 (1981); *State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Flowers,* 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct.App.1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira,* 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct.App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague,* 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App.1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson,* 128 Idaho at 561, 916 P.2d at 1286.

At the time of the stop, I.C. § 49–673(1) read, in pertinent part:

> Each occupant of the front seat of a motor vehicle which has a gross vehicle weight of no more than eight thousand (8,000) pounds, and which was manufactured with safety belts in compliance with federal motor vehicle safety standard no. 208, shall have a safety belt properly fastened about his body at all times when the vehicle is in motion.

Subsection (3) of I.C. § 49–673 describes the punishment imposed for the failure to comply with subsection one. At the time of the stop subsection (3) read:

> If a person is convicted of a violation of any traffic law, other than a violation of the provisions of section 49–1229 or 49–1230, Idaho Code, relating to proof of liability insurance, it shall be an additional infraction for any person to violate the provisions of this section, for which a fine of five dollars ($5.00) shall be imposed.

■ In his motion to suppress, Roe argued, and the district court agreed, that a violation of I.C. § 49–673(1) alone is insufficient to constitute reasonable suspicion to stop a vehicle because the statute requires a violation of another traffic law before the seatbelt law becomes a citable traffic offense. This Court exercises free review over the application and construction of statutes. *State v. Schumacher,* 131 Idaho 484, 485, 959 P.2d 465, 466 (Ct.App.1998). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar,* 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct.App.2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight,* 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar,* 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode,* 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is "incumbent upon a court to give a statute an interpretation which will not render it a nullity." *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001).

Here, the statute's language was plain and unambiguous. Idaho Code Section 49–673(1), as it read at the time, made the failure to wear a seatbelt a violation of a traffic law. Punishment, however, in the form of a fine was not allowed unless a *conviction* on another traffic law violation was obtained. The legislature did not, although it had the ability to do so, restrict law enforcement officers from initiating traffic stops based only upon a violation of the seatbelt law. We note that, effective July 1, 2003, I.C. § 49–673 *was* amended to add subsection (5) to provide that enforcement of the statute may only be accomplished as a secondary action when the operator of the motor vehicle has been detained for a suspected violation of another law.

Thus, the officer was justified in stopping the vehicle in which Roe was a passenger because the officer observed an apparent violation of the seatbelt law. *See United States v. Ramos,* 42 F.3d 1160, 1162 (8th Cir.1994). Therefore, the district court erred in granting Roe's motion to suppress evidence based upon an invalid traffic stop.

## B. Extended Detention

 Roe argues, alternatively, that even if the traffic stop was valid, the detention of the vehicle and its occupants became unreasonable as soon as those inside the vehicle put on their seatbelts. The determination of whether an investigative detention is reasonable requires a dual inquiry—whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances, which justified the interference in the first place. *State v. Parkinson,* 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App.2000). Because we determined that the traffic stop was valid, we need only to address the second prong of this inquiry—whether the investigative detention was reasonably related in scope to the circumstances. The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described place to be searched and the persons or things to be seized, even where the search is made pursuant to a warrant

issued upon probable cause. *Id.* Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Id.* In this regard, we must focus on the intensity of the detention, as well as the duration of the detention. *See id.* The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Id.* This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Id.* Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Id.* The purpose of the stop is not necessarily fixed at the time the stop is initiated. *Id.* at 362, 17 P.3d at 306. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Id.*

 Roe argues that, after the officer informed the occupants that he stopped the vehicle because they were not wearing seatbelts and the passengers put their seatbelts on, the reason for the stop terminated and the officer was no longer justified in eliciting additional information. However, this Court has held that, even after the justification for the stop has ended, an officer is not required to walk away without ascertaining the identity of the driver. *State v. Gutierrez,* 137 Idaho 647, 653, 51 P.3d 461, 467 (Ct.App. 2002). Additionally, this Court held in *Gutierrez* that, after making a lawful stop, the officer was allowed to identify the person stopped in order to protect the officer and others from danger, to accurately prepare any required reports concerning the stop, and to allow the officer to adequately respond to allegations of illegal conduct or improper behavior. In so concluding, this Court relied on the Idaho Supreme Court's holding in *State v. Godwin,* 121 Idaho 491, 826 P.2d 452 (1992). In *Godwin,* the Supreme Court held that asking for and receiving a status check on a driver's license did not violate the Fourth Amendment. *Id.* at 495, 826 P.2d at 456.

Here, the occupants of the vehicle put on their seatbelts when the first officer in-

formed them of the reason for the stop. While the first officer identified the driver, the second officer identified the rear seat passengers. The identification of the driver and rear seat passenger occurred simultaneously and, thus, the driver and passengers were not detained any longer than if the officer had only identified the driver. The second officer's verbal request for the identity of the rear passenger did not extend the duration of the stop beyond the time necessary to effectuate the purpose of the stop. Applying the rationale of *Gutierrez* and *Godwin* to the facts presented here, the officers' conduct was not improper. Therefore, Roe was not unreasonably detained pursuant to a lawful traffic stop.

## C. Search Incident to Arrest

The state argues that the district court erred in granting Roe's motion to suppress because the search of the car, including Roe's shorts, was valid incident to the arrest of a passenger or, in the alternative, the outstanding warrant for Roe's arrest. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The state may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* A search incident to lawful arrest is among the well-recognized exceptions to the Fourth Amendment's warrant requirement. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 693–94 (1969); *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App. 1993). The United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 774 (1981) (footnote omitted). The Court also extended the right to search incident to arrest to any containers

found within the passenger compartment of the vehicle if the passenger compartment is within the reach of the arrestee. *Id.* Idaho courts have adopted the *Belton* rule. *See State v. Calegar*, 104 Idaho 526, 530, 661 P.2d 311, 315 (1983).

The issue in this case is whether the search of Roe's shorts was valid incident to arrest. In *State v. Newsom*, 132 Idaho 698, 979 P.2d 100 (1998), the Idaho Supreme Court held that a search of the vehicle compartment could not extend to a passenger's purse when the officer instructed the passenger to leave her purse inside the vehicle as she exited. In *Newsom*, an officer stopped a vehicle and arrested the driver after learning that an outstanding warrant existed for the driver. Newsom, the passenger, had been sitting with her purse on her lap. Newsom was asked to exit the vehicle and, as she did, the officer directed Newsom to leave her purse in the vehicle. During a search incident to the arrest of the driver, the officers also searched Newsom's purse and found illegal substances. The Idaho Supreme Court reviewed the *Belton* decision and determined that, although *Belton* authorized police to search the passenger compartment of the vehicle incident to a lawful custodial arrest, *Belton* did not authorize a search of the passenger based solely on the arrest of the driver. Therefore, the Supreme Court held that Newsom was entitled to take her purse with her and was not required to leave it in the vehicle for the officer to search.

In *State v. Holland*, 135 Idaho 159, 15 P.3d 1167 (2000), the Idaho Supreme Court further explained its holding in *Newsom*, stating:

The holding does not stand for the proposition that a passenger's belongings may never be searched. Instead, *Newsom* stands for the proposition that the police cannot create a right to search a container by placing it within the passenger compartment of a car or by ordering someone else to place it there for them.

*Id.* at 163, 15 P.3d at 1171. In that case, Holland was a passenger in a vehicle pulled over for having a cracked windshield in violation of I.C. § 49–943(1). During the stop,

the driver was arrested pursuant to an outstanding warrant. The officer asked Holland to exit the vehicle. Holland requested her leather jacket and her purse, which she had left inside. Before complying with Holland's request, the officer searched the purse and found a box containing illegal substances. On appeal from the district court's order denying Holland's motion to suppress, Holland argued that the search of her purse exceeded the valid scope of a search incident to arrest. The Idaho Supreme Court affirmed the district court, holding that because Holland voluntarily left her purse in the vehicle when she exited, the purse was a container within the passenger compartment of the vehicle and subject to a search incident to the arrest of the driver.

In *Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), the United States Supreme Court held that a search of a passenger's purse, which was found in the back seat of the vehicle, was valid when the officers had probable cause to search the car. In *Houghton,* officers stopped a vehicle for speeding and driving with a faulty brake light. While questioning the driver, the officer noticed a syringe in the driver's shirt pocket. The driver told the officer he used it to take drugs. Having probable cause to believe there were illegal drugs in the car, officers ordered Houghton and another female passenger out and searched the passenger compartment for contraband. The officers searched Houghton's purse, which the officers found on the back seat. The search revealed drugs and drug paraphernalia. Justice Breyer emphasized that a purse is a personal container and a search of it nearly involves the same intrusion as the search of the person:

> Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times. So I am tempted to say that a search of a purse involves an intrusion so similar to a search of one's person that the same rule should govern both. However, given this Court's prior cases, I cannot argue that the fact that the container was a purse *automatically* makes a legal difference, for the Court has warned against trying to make that kind of distinc-

tion. . . . But I can say that it would matter if a woman's purse, like a man's billfold, were attached to her person. It might then amount to a kind of "outer clothing," . . . which under the Court's cases would properly receive increased protection.

*Id.* at 308, 119 S.Ct. at 1304, 143 L.Ed.2d at 419 (Breyer, J., concurring).

 After reviewing the facts in these cases, we do not read *Newsom* to extend constitutional protection to any and all items taken from a vehicle by a passenger. We agree that a purse and perhaps a billfold are items that can be considered part of the person, much like the clothing a person is wearing. On the other hand, under the facts of this case, a pair of shorts not being worn at the time and which are not ordinarily carried with a person is more akin to a container found inside a vehicle. We conclude that a passenger cannot, upon being asked to exit a vehicle, extract various containers from the vehicle to avoid search of the containers. This is emphasized in a case such as the present, where five exiting occupants could maintain control over weapons and contraband in articles of clothing, coats or various containers. Therefore, we hold that the officer did not exceed the scope of the vehicle search incident to the arrest of the other passenger by directing Roe to leave the extra pair of shorts in the vehicle. Because we uphold the validity of the search of Roe's shorts, we need not address the effect of the outstanding warrant for Roe's arrest on the validity of the search.

### III.

### CONCLUSION

Because the officer observed an apparent violation of Idaho's seatbelt law, as it existed at that time, the officer was justified in stopping the vehicle in which Roe was a passenger. Also, Roe was not unreasonably detained when one officer requested identification of the driver of the vehicle and another officer requested identification of the rear passengers. Additionally, the officer did not exceed the scope of the search incident to arrest when he searched Roe's shorts.

Based on these conclusions, we reverse the district court's order granting Roe's motion to suppress evidence.

Judge GUTIERREZ, concurs.

Chief Judge LANSING, concurring in the result.

I concur with the majority's view that the suppression order in this case must be reversed, but I respectfully disagree with its holding that the initial traffic stop, for a seatbelt violation, was lawful.

I would hold that the traffic stop was impermissible. In my view, the rather unusual formulation of I.C. § 49-673—requiring the use of seatbelts but making noncompliance an infraction only if the person has been convicted for violating another traffic law—means that there is no infraction, and hence no justification for a traffic stop, when the seatbelt violation is the only purpose for the stop. Although at the time in question the statute was not specific with respect to police authority to conduct a vehicle stop for a violation, the peculiar structure of the statute signaled a legislative intent that vehicle operators were not to be subject to law enforcement actions for non-use of seatbelts unless and until another traffic law had been violated. Therefore, as a matter of statutory application, the stop was unjustified.

It does not follow, however, that the subsequent arrest of passengers and the search of the vehicle were unlawful as fruit of the illegal stop. The search of the automobile was conducted as a search incident to the arrest of Roe's fellow passenger after officers discovered that there were three outstanding warrants for the passenger's arrest. The discovery of outstanding warrants, which represent prior judicial determinations of probable cause for arrest, constitutes an intervening circumstance that overcomes the taint of the initial unlawful detention. Evidence that would not have been found but for illegal police conduct will not be subject to suppression if the evidence was not acquired by exploitation of the illegality but, instead, "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct.

407, 418, 9 L.Ed.2d 441, 455 (1963). *See also State v. Bainbridge,* 117 Idaho 245, 249, 787 P.2d 231, 235 (1990). That is, if the causal chain between the illegal police conduct and the acquisition of the evidence is so attenuated as to dissipate the taint of the illegal behavior, suppression is unnecessary. *Brown v. Illinois,* 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416, 426-27 (1975). In *Brown,* the United States Supreme Court identified three factors to be used in determining whether the causal chain is sufficiently attenuated: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id.*

Numerous jurisdictions have held that the discovery of an outstanding arrest warrant gives the officer independent probable cause to arrest and thereby constitutes an intervening circumstance that dissipates the taint of an initial illegal stop. *See United States v. Green,* 111 F.3d 515 (7th Cir.1997); *People v. Hillyard,* 197 Colo. 83, 589 P.2d 939 (1979); *Ruffin v. State,* 201 Ga.App. 792, 412 S.E.2d 850 (1991); *State v. Hill,* 725 So.2d 1282 (La.1998); *State v. Thompson,* 231 Neb. 771, 438 N.W.2d 131 (1989); *Fletcher v. State,* 90 S.W.3d 419 (Tex.Crim.App.2002); *Reed v. State,* 809 S.W.2d 940 (Tex.Crim.App.1991); *State v. Rothenberger,* 73 Wash.2d 596, 440 P.2d 184 (1968). In such a circumstance, probable cause for the individual's arrest was established prior to the unlawful detention, as evidenced by the valid arrest warrant, and therefore authority for the arrest is not developed through exploitation of the unlawful stop. As the court in *Green* noted, a rule disallowing arrest on a lawful warrant discovered during the course of an unlawful detention would lead to an anomalous result. "It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of 'Olly, Olly, Oxen Free.'" *Id.* at 521.

This is not to suggest, of course, that officers are free to conduct stops that they know to be unsupported by reasonable suspi-

cion simply to check an individual's identity and run a warrants check. Nearly twenty-five years ago the United States Supreme Court made it clear that in the absence of any basis for suspecting an individual of misconduct, the Fourth Amendment does not allow government agents to detain the individual and demand identification. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Because the purpose and flagrancy of the official misconduct is one of the factors to be considered in applying the attenuation doctrine, *Brown v. Illinois,* 422 U.S. at 604, 95 S.Ct. at 2262, 45 L.Ed.2d at 427 an officer's intentional disregard of this Fourth Amendment limitation would weigh heavily against any argument that a preexisting warrant dissipated the taint. Here, however, the officer was acting in good faith although, in my view, unlawfully, when he stopped the car in which Roe was riding; and there is no indication that the officer was using the seatbelt violation as a pretext to obtain the identities of the vehicle's occupants.

Because I conclude that the existence of an outstanding warrant for the arrest of a passenger constitutes an intervening circumstance that dissipates the taint of the illegal stop, I concur with the majority holding that the search of the vehicle was lawful as a search incident to the passenger's arrest.

I also concur with section II(C) of the lead opinion, holding that the police were entitled to search the shorts that Roe was carrying when officers undertook a search of the vehicle incident to the arrest of another passenger. Therefore, I agree that the district court's order granting Roe's motion to suppress evidence must be reversed.