**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32597**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | **2007 Opinion No. 21** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: April 20, 2007** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| **JOSEPH JACKSON BAXTER,** | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. John C. Hohnhorst, District Judge.

Judgment of conviction for possession of a controlled substance and being a persistent violator, <u>vacated</u>.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Thomas Tharp, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Chief Judge

Joseph Jackson Baxter appeals from his judgment of conviction for possession of a controlled substance and being a persistent violator. Specifically, Baxter challenges the district court's order denying his pre-trial motion to suppress evidence. For the reasons set forth below, we vacate his judgment of conviction.

**I.**

**FACTS AND PROCEDURE**

Baxter was charged with possession of a controlled substance, methamphetamine. I.C. § 37-2732(c). Baxter was also charged with being a persistent violator. I.C. § 19-2514. Baxter filed a motion to suppress the methamphetamine discovered in his wallet which led to his charge. The following facts were found pursuant to a hearing on the motion to suppress.

A bail recovery agent (the agent), was seeking J.H. because he forfeited a surety bond when failing to appear at a scheduled court date. As a result of J.H.'s failure to appear, a bench

1

warrant had been issued for his arrest. The agent, believing she had seen J.H. in the front passenger seat of a vehicle, phoned the police and reported the vehicle's location so that J.H. could be arrested pursuant to the warrant. The agent was mistaken. The man she believed to be J.H. was actually Baxter. The agent was familiar with both J.H. and Baxter, and the men bore a close physical resemblance to one another.

Shortly thereafter, a police officer stopped the vehicle that Baxter was in based on the vehicle's description provided by the agent, as relayed to the officer from police dispatch. When the vehicle carrying Baxter came to a stop, the front passenger door opened. The officer, believing that the suspect would run, moved quickly to the door and asked Baxter to step out of the vehicle. Baxter complied, and the officer asked his name and whether he had any identification. In reply, Baxter gave the officer his correct name and stated he had no identification. The officer, still believing that Baxter was J.H. and lying to avoid arrest, informed Baxter he was not under arrest but that he would be detained until the officer could verify his identity.

The officer frisked Baxter for weapons. Shortly after beginning the frisk, the officer felt what he believed to be a wallet in Baxter's rear pocket. The officer asked Baxter if there was any identification in the wallet, and Baxter replied in the negative. The officer then asked if he could remove the wallet and check it for identification. The district court found that Baxter consented to the removal and search of the wallet. However, at the evidentiary hearing, Baxter denied having given such consent.

The officer handed the wallet to another officer who had just arrived to assist the detaining officer. The support officer discovered several baggies in the wallet that he suspected contained a controlled substance and were later confirmed to be methamphetamine. A social security card bearing Baxter's name was also found inside the wallet. Baxter was placed under arrest.

At some point, the agent, who had been nearby when Baxter was stopped, informed yet another officer at the scene, who was not involved with the stop and detention of Baxter, that she had misidentified Baxter as J.H. It was never established in the record whether this took place before or after the discovery of the methamphetamine and Baxter's consequent arrest. The detaining officer testified that he was unaware of Baxter's true identity until after Baxter was placed under arrest. The detaining officer also testified that no one spoke to him about Baxter's

2

identity, other than Baxter himself, during the investigative detention. The district court made no finding of fact as to exactly when the agent informed the other officer of her mistake.

The district court found the testimony of the officers more credible than that of Baxter and the two witnesses who testified on his behalf. The district court noted that it reached this determination as a result of several assessments, among which were the perceived inconsistencies and exaggerations in the testimony of Baxter and his supporting witnesses, the appearance and demeanor of the witnesses, their prior felony convictions, and Baxter's motive to be untruthful. The district court concluded that the state had met its burden of proving, by a preponderance of the evidence, that both the detention and frisk of Baxter were based on reasonable suspicion. The district court went on to conclude the search of the wallet was reasonable due to Baxter's consent. The district court denied Baxter's motion to suppress.

After trial, Baxter was found guilty by a jury of possession of methamphetamine and being a persistent violator. The district court sentenced Baxter to a unified term of seven years, with a minimum period of incarceration of three years and six months. Baxter appeals.

## II.

## ANALYSIS

On appeal, Baxter asserts the district court erred in denying his motion to suppress on three grounds. Baxter initially argues the investigative detention, while initially reasonable, was impermissibly long. Baxter next contends that the officer lacked the specific and articulable facts necessary to justify a frisk of his person for weapons. The state contends the frisk was justified as a search incident to arrest based on probable cause to arrest Baxter pursuant to the warrant. Baxter also argues that the district court erred in concluding that his testimony, and that of his witnesses, that he did not give consent for the search of his wallet was not as credible as the testimony of the officers.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

3

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A.     Length of Initial Detention

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, a lawful detention can become unlawful if it is prolonged beyond the time reasonably required to complete the mission which justified the initial detention. *Muehler v. Mina,* 544 U.S. 93, 101 (2005); *Illinois v. Caballes,* 543 U.S. 405, 407 (2005). Furthermore, a detention that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes on the detainee's constitutional rights. *Caballes*, 543 U.S. at 407.

Information from a citizen, relayed to officers via radio by a police dispatcher, may provide sufficient grounds for an officer to initiate an investigative detention. *See State v. Etherington,* 129 Idaho 463, 466-67, 926 P.2d 1310, 1313-14 (Ct. App. 1996). Where the information comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of his or her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability. *State v. Alexander,* 138 Idaho 18, 24, 56 P.3d 780, 786 (Ct. App. 2002). Officers may stop a person whom they reasonably believe to be the subject of an arrest warrant and may detain that person for the limited purpose of confirming his or her identity. *See State v. Bromgard,* 139 Idaho 375, 379, 70 P.3d 734, 738 (Ct. App. 2003).

Here, the officer was informed via dispatch that the agent, a known citizen, had alerted the police to the location of a man, J.H., who had a valid arrest warrant issued for him. Although the informant had misidentified Baxter as J.H., Baxter does not dispute that his stop and detention were valid at inception. Baxter concedes then, implicitly, that the officer was justified in detaining him for the purpose of establishing his identity. Baxter asserts, however, that the reasonable suspicion to detain him ceased to exist when the agent told the police that she had misidentified Baxter, mistaking him for J.H. Baxter argues that, once this information came to light, under the collective knowledge doctrine, the arresting officer no longer had reasonable suspicion to detain him, and his continued detention violated his constitutional rights.

Articulable facts supporting reasonable suspicion, while usually grounded in an officer's personal perceptions and inferences may, in appropriate circumstances, be based upon external information. *See State v. Carr*, 123 Idaho 127, 130, 844 P.2d 1377, 1380 (Ct. App. 1992); *State v. Cooper*, 119 Idaho 654, 659, 809 P.2d 515, 520 (Ct. App. 1991). Whether an officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances--the collective knowledge of all those officers and dispatchers involved. *State v. Van Dorne*, 139 Idaho 961, 964, 88 P.3d 780, 783 (Ct. App. 2004).

Baxter's argument requires facts never developed by the parties during the suppression hearing. It was established that the arresting officer was not informed that the individual he detained was Baxter, not J.H., until after Baxter was placed under arrest for possession of methamphetamine. The agent testified she had informed another officer at the scene, who was not involved in the detention or arrest of Baxter, that she had misidentified Baxter. However, no temporal relationship between when the agent informed the other officer of the misidentification and when Baxter was questioned and arrested was ever specifically established at the hearing. In short, there are no facts in the record that would allow the inference that the collective knowledge relied upon by the arresting officer, any time prior to Baxter's arrest, included knowledge of the agent's misidentification.

We recognize that the district court made no specific finding as to when the police were informed they had detained Baxter and not J.H. A review of the record indicates the district court was not presented with sufficient evidence to make such a finding. Therefore, we cannot conclude that the scope or length of Baxter's detention was unreasonable based on the collective knowledge of the police on the scene.

5

**B.     Frisk for Weapons**

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, grounds to justify a lawful investigatory stop do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir*, 116 Idaho 565, 567-68, 777 P.2d 1238, 1240-41 (Ct. App. 1989).

Baxter asserts that, under the *Terry* standard, to justify a frisk the officer must have reasonable suspicion that a suspect is both armed and dangerous.[1] Baxter argues that, here, the arresting officer possessed no specific and articulable facts under which he could reasonably conclude that Baxter was either armed or dangerous. The Idaho Supreme Court recently addressed whether an officer must possess facts indicating that a person is both armed and dangerous prior to conducting a frisk or whether a person need only be armed in order for such a

---

[1]     Baxter based this assertion prior to the release of the Idaho Supreme Court's final opinion in *State v. Henage*, 143 Idaho 655, 152 P.3d 16 (2007). Baxter's brief cited and, his assertion relied on, the initial opinion in *Henage*, not the subsequent opinion released following rehearing.

search to be justified. *See State v. Henage*, 143 Idaho 655, 152 P.3d 16 (2007). The Supreme Court held that neither characterization grasps the essence of *Terry*. *Id*., at 661, 152 P.3d at 22. The proper inquiry is to "determine whether it was objectively reasonable for [the officer] to conclude a pat down search was necessary for the protection of [the officer] or others." *Id*. In *Henage*, the officer was aware that the defendant possessed a knife. However, the defendant exhibited no furtive behavior or suspicious movements or any other actions indicating he was dangerous, threatening, or uncooperative. Furthermore, the officer had known the defendant for several years, had never had a combative experience with him, and their conversation prior to the frisk had been congenial. Consequently, the Idaho Supreme Court concluded that, even though the defendant was armed, there were insufficient facts to objectively support the officer's conclusion that the defendant posed a potential risk. *Id.* at 662, 152 P.3d at 23.

In the instant case, the stop of the vehicle was made during midday. The vehicle containing Baxter had three additional individuals inside, including the driver. The district court noted that the warrant for J.H.'s arrest included a charge of resisting arrest. However, the detaining officer testified at the suppression hearing that, while he had been informed that the passenger in the front seat had a warrant for his arrest, he did not know the nature of the charge in the outstanding warrant. Even though the officer was justified in suspecting Baxter might be J.H. and that he was possibly lying about his identity, there was no evidence that the officer personally knew J.H. or any reputation he may have had for violence. Moreover, there is no evidence that the officer knew or even reasonably suspected Baxter was armed.

Like in *Henage,* there were no facts adduced at the suppression hearing that Baxter or his companions were uncooperative, violent, or abusive while being detained. There was no evidence that Baxter's clothing had any suspicious bulges. The record does not suggest Baxter acted furtively, attempted to conceal his hands, or move objects about his person. While there were three other individuals in the vehicle, none of them attempted to get out or otherwise resist. There was no evidence indicating the other passengers might be armed or dangerous or that there were weapons generally present in the vehicle. Furthermore, the officer testified that, shortly after he made contact with Baxter, other officers were beginning to arrive at the scene.

Considering the facts known to the officer and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances, we cannot conclude that a frisk for weapons was justified. It was not objectively reasonable for the officer to conclude a

7

frisk was necessary for his protection or that of others, as there were no facts indicating Baxter was either armed or dangerous. *See Henage*, 143 Idaho 661, 152 P.3d at 22. Therefore, the district court erred in concluding the officer's frisk of Baxter was a lawful, reasonable exception to the search warrant requirement of the Fourth Amendment.

**C.     Search Incident to Arrest**

Without fully articulating or supporting the argument with authority, the state contends in the alternative that the detaining officer had probable cause to search Baxter incident to arrest based on the warrant. Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984). The alternative theory need not have been raised before the trial court. *State v. Kerley,* 134 Idaho 870, 874, 11 P.3d 489, 489, 493 (Ct. App. 2000).

A search incident to a valid arrest is among the well-delineated exceptions to the warrant requirement and, thus, does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California,* 395 U.S. 752, 762-63 (1969); *State v. Moore,* 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Pursuant to this exception, the police may search an arrestee incident to a lawful custodial arrest. *United States v. Robinson,* 414 U.S. 218, 235 (1973); *Moore,* 129 Idaho at 781, 932 P.2d at 904. "The permissible scope and purposes of a search incident to an arrest is not limited to the removal of weapons but includes the discovery and seizures of evidence of crime and articles of value which, if left in the arrestee's possession, might be used to facilitate his escape." *Moore,* 129 Idaho at 781, 932 P.2d at 904.

Under the state's alternative argument, the officer would have been justified in conducting the frisk of Baxter, absent any reasonable suspicion that he was armed and presently dangerous, if the officer had probable cause to arrest Baxter. A police officer may make an arrest in obedience to a warrant. I.C. § 19-603. The officer must, however, have probable cause to believe the person being arrested is the same individual named in the warrant prior to effectuating a custodial arrest. *See Kerley,* 134 Idaho at 874, 11 P.3d at 493. Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *See State v. Julian,* 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id.* Rather,

probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian,* 129 Idaho at 136, 922 P.2d at 1062. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Julian,* 129 Idaho at 136, 922 P.2d at 1062. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.* A probable cause analysis must allow room for mistakes on the part of the arresting officer but only the mistakes of a reasonable person acting on facts which sensibly led to his or her conclusions of probability. *Kerley,* 134 Idaho at 874, 11 P.3d at 493.

Prior to the frisk of Baxter, the officer was informed there was an outstanding arrest warrant for a man named J.H. The officer had been further informed that a known citizen informant, the agent, had reported that J.H. was in the front passenger seat of the vehicle matching the description the officer had just stopped. There was no finding of fact that the officer had been given a physical description of J.H. or that the officer was familiar with J.H.'s appearance through prior contact or other means.[2] When the officer detained Baxter and questioned him about his identity, Baxter gave his correct name and denied he was J.H. The agent testified that she could not recall if she had provided a description of J.H. to the police when she phoned in the information as to J.H.'s whereabouts. The arresting officer testified that he did not arrest Baxter on the basis of the warrant because he had not positively established Baxter's actual identity.

The totality of the information available to the officer at the time he conducted the frisk raised a reasonable suspicion that the man he was detaining might be J.H and the subject of the outstanding warrant. We cannot conclude, however, that there was sufficient information for a reasonably prudent officer to believe that the man being detained was actually J.H. and that his arrest pursuant to the warrant was reasonable absent further investigation.[3] Therefore, we

---

[2] At the suppression hearing the officer was never asked if he knew J.H.'s physical appearance. However, the officer's testimony indicated that he was detaining Baxter, prior to the discovery of the methamphetamine, solely to determine his identity.

[3] While our analysis is an entirely objective one, we note also that the arresting officer was essentially of the opinion that he lacked the probable cause to arrest based on the warrant alone.

conclude that probable cause to arrest Baxter did not exist prior to the frisk of his person, and the frisk cannot be justified as a search incident to arrest.

**D.     Consent to Search**

Baxter argues the district court erred in finding he consented to the removal and search of his wallet.   The state contends that the district court's finding is supported by substantial evidence, and this Court cannot weigh the evidence anew on appeal.

A search may be rendered reasonable by an individual's consent.  *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998).  In such instances, the state has the burden of demonstrating consent by a preponderance of the evidence.  *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997).  The state must show that consent was not the result of duress or coercion, either direct or implied.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993).   The voluntariness of an individual's consent is evaluated in light of all the circumstances.  *Whiteley*, 124 Idaho at 264, 858 P.2d at 803.  Consent to search may be in the form of words, gestures, or conduct.  *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991).  Whether consent was granted voluntarily is a question of fact to be determined by all the surrounding circumstances.  *State v. Hansen,* 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

The district court made a finding that Baxter voluntarily gave the officer detaining him consent to remove his wallet from his pants pocket and search it for identification. The officer felt the wallet and subsequently asked for consent to remove it during the course of the unlawful frisk.  On appeal, Baxter does not argue his consent was involuntary and the result of coercion. Instead, Baxter argues that he never gave consent to remove or search his wallet.  Specifically, Baxter contends the district court erred in finding the testimony of the officers more credible than the conflicting testimony of Baxter and the witnesses called by him to support his argument.

Essentially, Baxter asks this Court to determine that the district court's assessment of the credibility of Baxter's testimony, and the testimony of his witnesses, was incorrect.  It is well established that determining the credibility of witnesses, resolving factual conflicts, and determining the weight of evidence is vested solely within the power of the district court. *Valdez-Molina*, 127 Idaho at 106, 897 P.2d at 997; *State v. Kirkwood,* 111 Idaho 623, 625, 726 P.2d 735, 737 (1986); *Schevers*, 132 Idaho at 789, 979 P.2d at 662.  We cannot usurp the

10

fact-finding functions of the district court. We accept the district court's finding that Baxter consented to the removal and search of his wallet as it was supported by the testimony of the officers presented by the state.

However, consent to search does not expunge the taint of unlawful police activity where the events are irrevocably intertwined. *Kerley,* 134 Idaho at 874, 11 P.3d at 493. If this Court determines that consent to search was derived by exploitation of an unlawful police frisk, the consent will not purge from the evidence the taint of the unlawful police conduct. *Id.* at 874-45, 11 P.3d 493-94. Relevant factors include the presence of intervening circumstances and the length of time between the consent and the frisk. *Id.*

In *Kerley*, a police officer was conducting an investigative detention of a defendant based on information received by the officer that an individual with the same description and last name as the defendant had a warrant issued for his arrest. The defendant had not been placed under arrest. While performing an unlawful frisk of the defendant, the officer felt an object in the defendant's pants pocket. The officer asked what the object was, and the defendant responded that it was a bolt. The officer stated that he did not believe the defendant and asked if he could remove the object from the pants pocket. The defendant consented to the removal of the object. The object was a vial containing methamphetamine. We determined that the consent to remove the object flowed directly from the officer's unlawful frisk. There was no appreciable lapse of time between the frisk and the consent. We concluded that the two events were irrevocably intertwined and the consent did not purge the taint of the unlawful frisk.

Similarly, in the instant case there was no appreciable lapse of time or circumstances intervening between when the officer felt the wallet during the unlawful frisk and Baxter's consent to remove the wallet. Indeed, the officer testified at the suppression hearing that, when he felt the wallet at the beginning of the frisk, which was ostensibly to check Baxter for weapons, he immediately terminated the frisk and asked if he had consent to remove and search the wallet. These two events are irrevocably intertwined such that the consent to search the wallet flowed directly from the discovery of the wallet through the unlawful frisk. Therefore, the district court's order denying Baxter's motion to suppress cannot be affirmed on the grounds that Baxter consented to the removal and search of his wallet.

### III.

### CONCLUSION

Baxter does not dispute that the officer had reasonable suspicion to detain him for the purpose of determining if he was J.H., a man who had an outstanding warrant for arrest. There are insufficient facts in the record to conclude Baxter's detention was unreasonably long in light of the agent eventually informing an officer, not connected with Baxter's detention, that she had misidentified him. However, there were insufficient specific and articulable facts for the officer to reasonably conclude a frisk of Baxter was necessary for the officer's protection or the protection of others. As a result, the frisk of Baxter's person for weapons was unlawful. While Baxter consented to having his wallet removed and searched, that consent was tainted by the discovery of the wallet during the unlawful frisk. Therefore, the district court erred in concluding the frisk was justified. Accordingly, Baxter's judgment of conviction for possession of a controlled substance and being a persistent violator is vacated.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**