# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49056

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

KYLE NICHOLAS CALLAGHAN,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: October 18, 2022

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Jonathan Brody, District Judge.

Judgment of conviction for two counts of possession of a controlled substance, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Kyle Nicholas Callaghan appeals from his judgment of conviction for two counts of possession of a controlled substance, Idaho Code §§ 37-2732(c)(1) (cocaine), 37-2732(c)(3) (Alprazolam). Callaghan asserts the district court erred in denying his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol in Ketchum, Deputy Romashko observed Callaghan get into a parked vehicle at approximately 2:15 a.m., sit for a few minutes, get out, walk around, return to the vehicle, and then repeat the same conduct again. Deputy Romashko briefly left the area to check on another officer, but when he returned, Callaghan remained sitting in the vehicle. After

1

observing Callaghan for several minutes, Deputy Romashko parked in an available parking space without activating any emergency lights, reported the vehicle's license plate number to dispatch, and then made contact with Callaghan.

Callaghan was in the driver's seat of the vehicle, opened the vehicle door, and appeared to be on his cell phone. Deputy Romashko testified he recognized Callaghan from a prior law enforcement contact, smelled the odor of alcohol, and observed Callaghan had glassy eyes. Callaghan explained he was charging his cell phone so he could locate a friend's address, and Deputy Romashko saw that Callaghan had a map displayed on the phone and that the phone's battery indicator was red. Deputy Romashko testified that his purpose in contacting Callaghan was "to make sure everything [was] going all right"; Callaghan was "safe to drive;" and there was "not any trouble" with the vehicle.

While Deputy Romashko was speaking with Callaghan, dispatch ran the vehicle's license plate and informed Deputy Romashko that "the registered owner [RO] of [the] vehicle does have a misdemeanor warrant out of Ada County [and] a history of assault and battery on certain personnel." Dispatch also identified Callaghan as the RO of the vehicle. Deputy Romashko testified that, upon learning Callaghan had an outstanding arrest warrant, Deputy Romashko realized he had not activated his body camera and activated it at that time.

The beginning of the bodycam video shows Deputy Romashko requesting Callaghan's driver's license and Callaghan providing it. Thereafter, Deputy Romashko retained the license, and once a backup officer arrived on the scene, Deputy Romashko informed Callaghan about the warrant. At that time, Deputy Romashko handcuffed Callaghan, placed him in the patrol car while Deputy Romashko waited to learn whether the warrant was extraditable, and arrested Callaghan upon learning it was. During a search of Callaghan incident to the arrest, Deputy Romashko discovered illegal substances in Callaghan's jacket pockets.

The State charged Callaghan with three counts of possession of a controlled substance. At a preliminary hearing, Deputy Romashko testified. Additionally, Deputy Romashko's bodycam video, his affidavit of probable cause, his initial report, and the audio of dispatch's communications with Deputy Romashko during the encounter were admitted into evidence. After the magistrate court bound Callaghan over to district court, he filed a motion to suppress the evidence discovered during the search incident to arrest, arguing that Deputy Romashko unlawfully detained Callaghan

when Deputy Romashko retained Callaghan's driver's license, and the subsequent discovery of the warrant did not sufficiently attenuate the unlawful detention.

The parties did not present evidence at the suppression hearing; rather, they stipulated to the district court's consideration of the evidence presented at the preliminary hearing. Based on this evidence, the court denied Callaghan's suppression motion on multiple grounds. It ruled that Deputy Romashko's initial contact was consensual and justified by his community caretaking function; his reasonable belief that Callaghan had an outstanding arrest warrant justified the detention; and the "brief detention" "to make a status check" on Callaghan's driver's license was justified. Alternatively, the court ruled that, "even if the stop was improper, the discovery of the warrant constituted an intervening circumstance dissipating the taint of any unlawful conduct." Following the denial of his suppression motion, Callaghan entered a conditional guilty plea to possession of cocaine and possession of Alprazolam and reserved his right to appeal.

Callaghan timely appeals.

## II.

## STANDARD OF REVIEW

Ordinarily, the standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Under certain circumstances, however, this Court may freely review and weigh the evidence in the same manner as the trial court. *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018) (applying free review standard to appeal of decision on suppression motion). Where the parties did not present any witnesses and this Court has the exact same evidence before it as the trial court considered, this Court need not extend the usual deference to the trial court's evaluation of the evidence. *Id.*

In this case, the parties did not present any evidence at the suppression hearing. Rather, they stipulated to the district court's consideration of the preliminary hearing transcript, Deputy

Romashko's bodycam video, his probable cause affidavit, his initial report, and the audio of his communications with dispatch during his encounter with Callaghan. This exact same evidence is before this Court on appeal, and the parties agree this Court should freely review the evidence.

## III.

## ANALYSIS

On appeal, Callaghan asserts Deputy Romashko unlawfully detained Callaghan before learning about the outstanding warrant for his arrest. The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific, articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of the detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

In this case, the State does not dispute that Deputy Romashko detained Callaghan when Deputy Romashko requested and retained Callaghan's driver's license. Meanwhile, Callaghan does not dispute that an officer may stop a person whom he reasonably believes is the subject of an outstanding arrest warrant and detain that person for the limited purpose of confirming the person's identity. *State v. Baxter*, 144 Idaho 672, 677, 168 P.3d 1019, 1024 (Ct. App. 2007). Accordingly, at issue is whether Deputy Romashko knew that Callaghan was the subject of an outstanding arrest warrant when Deputy Romashko requested and retained Callaghan's driver's license.

4

A review of the evidence shows that Deputy Romashko requested and retained Callaghan's driver's license only after dispatch informed Deputy Romashko that Callaghan was the subject of an outstanding arrest warrant. During the suppression hearing, Deputy Romashko repeatedly testified that he already knew about the warrant when he asked for Callaghan's driver's license. For example, on direct examination, he testified:

> Q. What was going on when you found out that [Callaghan had a warrant] in terms of your contact with [Callaghan]?
> A. I was just ensuring that he wasn't going to drive up until that point. When that happened for me that consensual contact changed to a stop.
> Q. So--but had you already obtained [Callaghan's] driver's license when you found out that information.
> A. No, I had not.
> Q. And so when you asked for his driver's license, you already knew that there was a warrant?
> A. Yes.

On cross-examination, Deputy Romashko again testified--at least three times--that he did not request Callaghan's driver's license until after learning about the warrant. For example, he testified:

> Q. And at what point did you call in his license to dispatch?
> A. After they notified me that he had a warrant, and that's when I requested his license.

On appeal, Callaghan contends the State did not meet its burden of showing Deputy Romashko knew about the outstanding warrant for Callaghan's arrest by challenging Deputy Romashko's credibility. First, Callaghan argues that Deputy Romashko's probable cause affidavit and initial report (both of which documents he wrote sometime after arresting Callaghan) "suggest" and "indicate" that Deputy Romashko discovered Callaghan was subject to a warrant only after obtaining his driver's license. In particular, Callaghan asserts the sequence of events identified in those documents is inconsistent with Deputy Romashko's testimony.

Both documents state that Deputy Romashko made contact with Callaghan; Callaghan identified himself by showing his driver's license; and dispatch contacted Deputy Romashko to inform him Callaghan was the vehicle's RO and had an outstanding arrest warrant. Callaghan cross-examined Deputy Romashko about these documents, including Callaghan's characterization of the documents as written in a "linear fashion." Deputy Romashko, however, never wavered in his position that he did not request Callaghan's driver's license until after learning about the warrant and explained the documents would be more accurate if Deputy Romashko had written

5

Callaghan "later" identified himself with his driver's license. Although the documents do not precisely articulate the chain of events, they do not contradict Deputy Romashko's testimony, contrary to Callaghan's argument.

Second, Callaghan argues Deputy Romashko's bodycam video does not "corroborate[]" his testimony. In support, Callaghan relies on Deputy Romashko's statement made after arresting Callaghan that "I didn't expect, once I was chatting with you and just making sure you were okay and being smart, I-I didn't expect that," apparently meaning Deputy Romashko did not expect to learn about the outstanding arrest warrant. Callaghan contends this statement indicates Deputy Romashko was not aware of the warrant until after taking Callaghan's license. The statement, however, is not inconsistent with Romashko's testimony that he contacted Callaghan to make sure "everything was all right"; while Deputy Romashko was speaking to Callaghan, dispatch informed Deputy Romashko about the warrant; and then he requested at that point to see Callaghan's driver's license. The challenged statement is consistent with Deputy Romashko's testimony that he initially contacted Callaghan to make sure he was okay and was chatting with Deputy Romashko when dispatch informed him about the warrant.

A comparison of Deputy Romashko's bodycam video and the audio of his communications with dispatch also show he did not ask for Callaghan's driver's license until after dispatch informed Deputy Romashko about the outstanding arrest warrant. The dispatch audio contains the dispatcher's communication to Deputy Romashko informing him about the warrant. Specifically, this communication was that the "registered owner of that vehicle does have a misdemeanor warrant out of Ada County; history of assault and battery on certain personnel."[1] Thereafter, the dispatch audio contains a communication between dispatch and Deputy Romashko confirming he was with the RO, i.e., Callaghan. Likewise, Deputy Romashko's bodycam video records his statements during this same exchange with dispatch:[2]

Deputy Romashko: Confirm RO. Affirm.
Dispatch: Confirming you are with the RO.

---

[1]    Deputy Romashko repeatedly testified that upon receiving notice about the outstanding arrest warrant he activated his bodycam.

[2]    Deputy Romashko testified he was wearing an "earpiece" so his bodycam only recorded his communications to dispatch and not dispatch's communication to him, which Callaghan could not hear.

6

Deputy Romashko      Affirm.

A comparison of the timing of this exchange on the dispatch audio and the bodycam video establishes that, as Deputy Romashko testified, he did not turn on his bodycam until dispatch informed him of the warrant and he did not ask for Callaghan's driver's license until after learning of the warrant.

Based on the evidence, we find that Deputy Romashko did not ask for Callaghan's driver's license until after dispatch informed Deputy Romashko that Callaghan had an outstanding arrest warrant and that Deputy Romashko had a reasonable belief based on this communication that Callaghan was the subject of the warrant. *Cf. State v. Carr*, 123 Idaho 127, 130, 844 P.2d 1377, 1380 (Ct. App. 1992) (ruling officer may rely on dispatch personnel to support finding of probable cause). Because an officer may detain a person he reasonably believes is the subject of an outstanding arrest warrant for purposes of confirming the person's identity, we hold that Deputy Romashko lawfully detained Callaghan. *See Baxter*, 144 Idaho at 677, 168 P.3d at 1024 (ruling officer may detain person reasonably suspected of being subject to outstanding arrest warrant). Because we conclude Deputy Romashko had a reasonable belief that Callaghan was subject to a warrant when Deputy Romashko detained Callaghan, we do not address Callaghan's alternative arguments.[3]

## IV.

## CONCLUSION

The district court did not err by denying Callaghan's suppression motion. Accordingly, we affirm that denial and the judgment of conviction.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

---

[3] Callaghan's alternative arguments include that the community caretaking doctrine did not justify Deputy Romashko's conduct; reasonable suspicion did not justify his conduct; and the district court erroneously applied the attenuation doctrine.