## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Docket No. 44935 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN McGRAW, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |
| STATE OF IDAHO, | ) | Docket No. 44942 |
| | ) | |
| Plaintiff-Appellant, | ) | 2018 Opinion No. 17 |
| | ) | |
| v. | ) | Filed: April 6, 2018 |
| | ) | |
| LACEY KILLEEN, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael Reardon, District Judge.

Orders granting motions to suppress, <u>reversed</u> and <u>remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for respondent Brian McGraw. Andrea W. Reynolds argued.

Robyn A. Fyffe, Boise, for respondent Lacey Killeen.

_____

LORELLO, Judge

The State appeals from the district court's orders granting Brian McGraw's and Lacey Killeen's motions to suppress evidence resulting from a search subsequent to a drug-dog sniff conducted during a traffic stop. The State argues that the officers did not abandon the initial

1

purpose of the traffic stop, and therefore the district court erred in granting the suppression motions. For the reasons explained below, we reverse and remand.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol, a police officer (Officer One) conducted a traffic stop on a car driven by Killeen in which McGraw was a passenger. A second officer (Officer Two), who was close by, heard the stop over dispatch and arrived at the scene shortly after the stop was initiated. During the course of the traffic stop, Officer One questioned both McGraw and Killeen regarding their probation and/or parole statuses, and McGraw answered that he was on parole for delivery of marijuana. After his initial conversation with Killeen and McGraw, Officer One performed his routine functions for a traffic stop including identifying the car's occupants through dispatch, determining whether there were any outstanding warrants, and checking Killeen's driver's license status. Upon receiving returns from dispatch, Officer One asked Killeen to step out of the car and advised her he was going to have his canine sniff the car while he wrote a citation. When Officer One removed Killeen from the car, Officer Two engaged McGraw in conversation and ultimately had him exit the vehicle as well.

As Officer One was writing the citation, Officer Two volunteered to complete the citation while Officer One deployed his canine. Officer One transferred the citation writing task to Officer Two and retrieved the canine. The canine alerted and, as a result, the officers searched the vehicle. The search produced marijuana, methamphetamine, and drug paraphernalia. Killeen and McGraw were arrested and charged with possession of a controlled substance and possession of paraphernalia. The district court consolidated Killeen's and McGraw's cases.

Killeen and McGraw filed motions to suppress evidence obtained during the search of Killeen's vehicle arguing, in relevant part, that the traffic stop was unlawfully prolonged. The district court granted the motion because Officer One abandoned the original purpose of the stop. The State appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by

2

substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Killeen and McGraw filed separate motions to suppress. Killeen's motion asserted there were "numerous acts unrelated to the traffic stop that thereby extended the stop in violation of the constitution." Killeen identified those acts as Officer One's inquiry into Killeen's and McGraw's parole statuses, Officer One explaining he "was going to run a dog around the vehicle" and inquiring whether there was "anything illegal" in the car, and Officer One requesting consent to search. McGraw, on the other hand, requested suppression on the basis that the stop was unlawfully extended when Officer One "directed" Officer Two to issue a citation while Officer One deployed his canine, and on the basis that the stop was pretextual. The district court denied suppression on the grounds that the stop was pretextual, but granted suppression on the basis that Officer One abandoned the original purpose of the stop. With respect to the latter, the district court made the following factual findings and legal conclusion:

> There was nothing that I heard from the conversation with Ms. Killeen or Mr. McGraw including his acknowledgment that he was on parole in and of itself that suggests that the stop could be extended based on new reasonable suspicion. It is clear to me given the sequence of events that [Officer One] himself actually did abandon the purpose of the stop when he handed the ticket book off to [Officer Two].
> And I appreciate that it took somewhere between two and five seconds to exchange the ticket book, but that act and the act of [Officer Two] then leaving the hood of the car and going into the car to turn the lights off and going around the back of the car to begin writing the citation, and, frankly, while he was moderately engaging Ms. Killeen in an apparent effort to complete the citation, it appeared to me that he was likely covering [Officer One] at the same time. It would be difficult to believe, and I would find it incredible, if he were to have told me that he wasn't paying attention to [Officer One] while ostensibly writing the citation and he wasn't continuously writing the citation from my review of the evidence. So I think that [Officer One], in fact, did abandon that purpose.

3

. . . .

So I can't find any basis not to regard this as an unlawful extension of the original stop based on [*State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016)] based on [*Rodriguez v. United States*, ___ U.S. ___, 135 S. Ct. 1609 (2015)] on which *Linze* is based. I think that [Officer One] did abandon the original purpose. It was a *de minimis* violation. But as we know from *Linze* and *Rodriguez*, *de minimis* violations are still violations.

The State argues that the district court erred because the act of exchanging the citation book did not constitute abandonment of the stop, but was the opposite of abandonment. The State further argues that, because the officers "cumulatively continued to diligently pursue the purpose of the stop," there was no Fourth Amendment violation. Killeen and McGraw argue that Officer One's abandonment unreasonably extended the stop because the act of handing the citation book to Officer Two "added time" to the stop. Killeen also argues that Officer Two added time to the stop by not continually writing the citation, and Officer One "deviated from the initial purpose of the stop" by removing Killeen from the vehicle. We conclude that suppression was not proper in this case.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As its text indicates, the "'touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *State v. Rios*, 160 Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1614 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license,

4

determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1615; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). An officer may also require the occupants to exit the vehicle during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997). Although a drug-dog sniff cannot fairly be characterized as part of the officer's traffic mission, it is well-established that a drug-dog sniff conducted during a lawful traffic stop is constitutionally permissible if it is executed in a reasonable manner and does not itself infringe upon a constitutionally protected privacy interest. *Caballes*, 543 U.S. at 409-10. Conversely, a drug-dog sniff conducted after an otherwise-completed traffic stop is unconstitutional absent independent reasonable suspicion for the sniff. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614.

In this case, the district court found that Killeen and McGraw were entitled to suppression because Officer One abandoned the purpose of the traffic stop in order to conduct the dog sniff.[1] The finding that Officer One personally abandoned the purpose of the stop is supported by the evidence presented at the suppression hearing. However, whether Officer One abandoned the purpose of the traffic stop does not answer the relevant legal question because, as noted, a drug-dog sniff that occurs during a lawful traffic stop is permitted. *See Caballes*, 543 U.S. at 410; *State v. Linze*, 161 Idaho 605, 609 n.1, 389 P.3d 150, 154 n.1 (2016). The question, instead, is whether the dog sniff occurred during the course of the traffic stop or whether the stop was unlawfully prolonged as a result of the sniff. While it is clear that Officer One was not pursuing the purpose of the traffic stop when he was conducting the dog sniff, it is equally clear that the purpose of the stop was not abandoned because the duties related thereto, which included the issuance of a citation, were transferred from Officer One to Officer Two before the sniff

---

[1] Our review is limited to the district court's factual findings and its legal conclusion that Officer One abandoned the purpose of the traffic stop. *See Atkinson*, 128 Idaho at 561, 916 P.2d at 1286 (standard of review of a decision on a motion to suppress requires deference to factual findings supported by the evidence and de novo review of the law as applied to those facts).

5

occurred. For this reason, this case is distinguishable from *Rodriguez* and *Linze*, upon which the district court relied.

In *Rodriguez*, an officer conducted a traffic stop after observing a car driving on the shoulder of the road in violation of state law. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1612. After the officer issued a written warning, returned the documents to the vehicle's occupants and was denied permission to conduct a dog sniff, the officer ordered the driver to exit his vehicle and wait for a canine officer. Once the canine officer arrived, he performed a dog sniff, and a search was conducted after the dog alerted. "All told, seven or eight minutes had elapsed from the time [the officer] issued the written warning until the dog indicated the presence of drugs." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1613. The Supreme Court granted certiorari to decide "whether police may routinely extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614; *see also id*. at ___, 135 S. Ct. at 1612 ("This case presents the question whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop."). The Court framed the "critical question" as "not whether the dog sniff occurs before or after the officer issues a ticket, but whether the sniff adds time to the stop." *Id.* at ___, 135 S. Ct. at 1616. The Court framed the question this way in response to the government's argument "that by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation." *Id.* The Court rejected this argument, explaining that the reasonableness of the seizure "depends on what the police in fact do." *Id*. Thus, once the purpose of the traffic stop has concluded, the seizure must end, and an officer cannot unreasonably prolong the stop for any reason, including delaying the citation in an effort to extend the stop. But, this does not mean that anything the officers do which is unrelated to the traffic stop and "adds time" to the stop renders the stop unreasonable or unconstitutional. In fact, the Court in *Rodriguez* reiterated that law enforcement may conduct inquiries unrelated to the traffic stop so long as those inquiries do not measurably extend the duration of the stop, and the Court reiterated the reasonableness requirement of the Fourth Amendment. *Id.* at ___, 135 S. Ct. at 1614-15.

In *Linze*, an officer stopped a vehicle for having a cracked windshield and, as he was writing the citation, he paused to call a canine unit. *Linze*, 161 Idaho at 606, 389 P.3d at 151.

6

When the canine officer arrived, the other officer stopped writing the citation, talked with the canine officer, and performed as backup as the canine officer walked the dog around the vehicle. It took approximately two and one-half minutes longer than it would have to issue the ticket had the officer not paused to assist in the drug-dog sniff. The Idaho Supreme Court applied *Rodriguez* and held that, by delaying the traffic stop for two and one-half minutes while performing a backup function for a drug-dog sniff, the officer committed a Fourth Amendment violation. *Linze*, 161 Idaho at 609, 389 P.3d at 154.

Unlike *Rodriguez*, the dog sniff in this case did not occur after the traffic stop was complete; it occurred during the traffic stop. Thus, the dog sniff did not "add time" to the stop in the way the dog sniff did in *Rodriguez*. And, unlike *Linze*, the stop in this case was not suspended while the dog sniff occurred, so it did not add time to the stop in the way the sniff did in *Linze*. Because of the factual differences, *Rodriguez* and *Linze* are distinguishable. If anything, footnote 1 from *Linze* supports our conclusion that suppression is unwarranted on these facts. As our Supreme Court noted in *Linze*, the "adds time to" framework from *Rodriguez* is intended to "allow for dog sniffs that do not add time to the stop (i.e., dog sniffs in which one officer continues to pursue the original objectives of the stop while a second officer conducts a dog sniff)." *Linze*, 161 Idaho at 609 n.1, 389 P.3d at 154 n.1. That is exactly what happened in this case--Officer Two continued to pursue the original objectives of the stop while Officer One conducted the dog sniff. The district court's findings that Officer Two was "likely covering" Officer One "at the same time" Officer Two was completing the citation and Officer Two did not appear to be "continuously writing the citation" also do not compel the legal conclusion that the stop was constitutionally unreasonable. We see no principled basis for holding, as a matter of Fourth Amendment law, that the dog sniff would pass constitutional muster if only Officer One would have continued writing the citation instead of transferring that task to Officer Two. We also see no principled basis for holding that the Fourth Amendment precludes one officer from pursuing the purpose of a stop *while* providing cover to another officer on-scene or for holding that the Fourth Amendment requires an officer to "continuously" write a citation without ever pausing for any reason. If anything, United States Supreme Court cases recognizing that inquiries unrelated to the purpose of the stop do not convert the stop into an unlawful detention so long as those inquiries do not measurably extend the duration of the stop support the opposite

7

conclusion. *See, e.g.*, *Johnson*, 555 U.S. at 333. Counting every pause taken while writing a citation as conduct that unlawfully adds time to the stop is inimical to the Fourth Amendment's reasonableness requirement and is contrary to United States Supreme Court precedent.

Our conclusion, that no Fourth Amendment violation occurred, comports with *Rodriguez* and *Linze* and gives meaning to the Fourth Amendment's reasonableness requirement. Because the drug-dog sniff in this case did not violate the Fourth Amendment, the district court erred in granting Killeen's and McGraw's motions to suppress and in dismissing their cases on that basis.

## IV.

## CONCLUSION

Because the drug-dog sniff in this case was conducted during the course of a lawful traffic stop, there was no Fourth Amendment violation. Thus, Killeen and McGraw were not entitled to suppression of the evidence discovered as a result of the search that occurred following the positive dog alert. Accordingly, we reverse the district court's orders granting McGraw's and Killeen's motions to suppress and remand this case for further proceedings consistent with this opinion.

Chief Judge GRATTON, **CONCURS**.

Judge GUTIERREZ, **DISSENTING**

I respectfully dissent, and I would affirm the district court's orders granting McGraw's and Killeen's motions to suppress. Based on the testimony and recordings of the traffic stop, there was substantial evidence to support a finding that the officers detoured from the initial purpose of the stop and that the collective acts of the officers to conduct an investigation of contraband extended the traffic stop for longer than was reasonably necessary to accomplish the tasks tied to the traffic infraction.

The Fourth Amendment to the United States Constitution provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if

8

there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).

The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). A seizure for a traffic violation justifies a police investigation of that violation, which includes inquiries beyond determining whether to issue a traffic ticket. *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1614 (2015). It encompasses ordinary queries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at ___, 135 S. Ct. at 1615. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

Similarly, an officer may take certain precautions to ensure officer safety because "the government's officer safety interest stems from the mission of the stop itself." *Id.* at ___, 135 S. Ct. at 1616 ("Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely.") These precautions include ordering all occupants of a vehicle, driver and passengers, to exit a stopped vehicle as a precautionary measure to protect the officer's safety. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931. However, because addressing the traffic infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the infraction are--or reasonably should have been--completed. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614; *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016).

However, a traffic stop's purpose does not encompass "[o]n-scene investigation into other crimes." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1616. Such an investigation detours

9

from the original mission of the stop. *Id.* A drug-dog sniff, unlike the routine measures as noted above, is not an ordinary incident of a traffic stop because it lacks the same close connection to roadway safety. *Id.* at ___, 135 S. Ct. at 1615. Therefore, a drug-dog sniff cannot fairly be characterized as "part of the officer's traffic mission." *Id.* It is a measure aimed at detecting evidence of criminal wrongdoing and thus constitutes a detour or deviation from the original purpose of the stop. *Id.* "So too do safety precautions taken in order to facilitate such detours." *Id.* at ___, 135 S. Ct. at 1616. Yet, not all detours are constitutionally prohibited; only those which prolong the stop for longer than is reasonably necessary to accomplish the mission of the stop. *Id.* Thus, if conducting an unrelated detour measurably extends the stop, the constitutional shield against unreasonable seizures is violated. *Id.* at ___, 135 S. Ct. at 1612.

"A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* Thus, in situations where there is both a traffic stop and a drug-dog sniff, the pertinent question is not when the drug-dog sniff occurred, either before or after the issuance of a traffic ticket, but rather whether conducting the drug-dog sniff prolongs or adds time to the stop. *Id.*

When an officer abandons his or her initial purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose. *Linze*, 161 Idaho at 609, 389 P.3d at 154. Thus, while an officer is justified in inquiring about the ordinary incidents to the traffic stop, without circumstances that justify a reasonable and articulable suspicion of criminal activity, the officer is restrained in extending the search and must diligently complete the task within a reasonable time. *Id.*

In *Linze*, the Idaho Supreme Court emphasized the reasoning from *Rodriguez* that, when a drug-dog sniff occurs contemporaneously with a traffic stop, the pertinent inquiry is not when the drug-dog sniff occurs or how expeditiously the officers conduct the traffic-based inquiries, but whether conducting the drug-dog sniff prolongs or adds time to the stop. *Linze*, 161 Idaho at 609, 389 P.3d at 154. The rule articulated in *Rodriguez* and adopted in *Linze* "isn't concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with

the fact that the officer deviates from the original purpose of the stop at all." *Id.* Therefore, an officer must always be reasonably diligent and refrain from delaying a traffic stop in order to conduct a drug-dog sniff. *Id.*

If the completion of the mission of the traffic stop is minimally extended in order to conduct the drug-dog sniff, it is unconstitutional. Thus, even if the completion of the mission of the stop is extended by a mere matter of seconds, such a *de minimus* extension in order to conduct a drug-dog sniff unconstitutionally prolongs the completion of the mission of the traffic stop. *Id.* Whether conducting the drug-dog sniff measurably extends the duration of the stop in violation of the Fourth Amendment depends on what the officers do. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614-15.

As the district court ruled, the officers impermissibly detoured from the traffic stop. The audio and video recordings reflect that by the time Killeen and McGraw were removed from the vehicle, Officer One had obtained all the necessary information from dispatch and could have written the citation. Yet, instead of issuing the citation, Officer One decided to interrupt the traffic stop to conduct a drug-dog sniff. Officer One placed the citation pad on the hood of the car. Officer Two asked Officer One what the citation was for and once told, Officer Two stated he would look up the code for the violation. Officer One remained where he was, standing between his vehicle and Killeen's. Officer Two picked up the citation pad, walked behind Officer One's vehicle, turned around, went back to the driver's side door of Officer One's vehicle, and opened the door briefly. Then, Officer Two walked behind Officer One's vehicle and positioned himself where he could observe both Killeen and McGraw on the curb and Killeen's vehicle. In the meantime, Officer One waited until Officer Two had positioned himself before turning to retrieve the drug dog. Officer Two then waited until Officer One had taken the drug dog out of the car before beginning to write the citation, approximately forty seconds after receiving the citation book. The district court determined that Officer Two was paying attention to Officer One, "ostensibly" writing the citation, and was intermittently doing so at best.

The district court determined these actions impermissibly prolonged the stop. The record reflects that the actions of the two officers that were focused on Officer One conducting the drug-dog sniff, i.e., the transfer and delay in the writing and issuing of the citation, delayed the

11

issuance of the citation.  As explained in *Rodriguez* and *Linze*, officers cannot delay the issuance of a citation in an effort to extend the stop for a drug-dog sniff.

Because the officers' actions taken to pursue the independent investigation for contraband without reasonable suspicion unreasonably prolonged the traffic stop, the seizure became violative of McGraw's and Killeen's Fourth Amendment rights.  Thus, any evidence produced after the officers ceased diligently pursuing the traffic stop and detoured to investigate for drugs should be suppressed.